**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-17-DLB**

**RAMIRO RAMIREZ-MENDEZ**                                             **PETITIONER**

**v.**                    **MEMORANDUM OPINION AND ORDER**

**SAMUEL OLSON, et al.,**                                             **RESPONDENTS**

* * * * * * * * * *

## I.    INTRODUCTION

This matter is before the Court on Petitioner Ramiro Ramirez-Mendez's Petition for Writ of Habeas Corpus (Doc. # 1).  Respondents[1] having filed their Responses (Docs. # 5 and 6), and Petitioner having filed his Reply (Doc. # 7), this matter is now ripe for review.  For the reasons that follow, the Court will **grant** the Petition.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Ramirez-Mendez is a national and citizen of Mexico who has resided in the United States since approximately June 7, 2018.  (Doc. # 1 ¶ 23).  According to the Notice to Appear, Petitioner was paroled into the United States on that same date.  (Doc. # 6-1).  The Notice to Appear also classified Petitioner as an "arriving alien."  (*Id*.).

---

[1]    Petitioner files this action against Samuel Olson, Acting Field Office Director of Enforcement and Removal Operations ("ERO"), Chicago Field Office, Immigration and Customs Enforcement ("ICE") and James A. Daley, Jailer, Campbell County Detention Center. Respondent Daley filed his Response, arguing that he is not Petitioner's legal or immediate custodian.  (Doc. # 5).  Petitioner does not dispute that Daley is not his legal or immediate custodian, and therefore, the Court will address only the Response filed by Respondent Samuel Olson.  (*See* Doc. # 6).

After being paroled into the United States, Petitioner filed an I-589 Application for Asylum, Withholding of Removal and Protection under the Convention Against Torture ("CAT") as a rider under his mother's application.  (Doc. # 1 ¶ 25).  Through his I-589 Application for Asylum, Petitioner applied for and received his Employment Authorization Document.  (*Id*. ¶ 27).  In the almost eight years since he was paroled into the United States, Petitioner has complied with the conditions of his release and has no criminal history.  (Doc. # 7 at 3).  On August 28, 2025, Petitioner was a passenger in a vehicle and was arrested after that vehicle had been stopped.  (*Id*.).  He was then placed in ICE custody, and was subsequently denied a bond hearing on the basis that the Immigration Judge ("IJ") lacked jurisdiction to issue a bond under the case of *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  (*Id*. at 4).  He has now been in detention for over six (6) months without a bond hearing.  A merits hearing was held on January 30, 2026, where the Immigration Judge denied his Application for Asylum, Withholding of Removal, and protection under CAT, and ordered him to be removed to Mexico.  (Doc. # 6 at 2).

On January 16, 2026, Petitioner, through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1).  Petitioner claims that his continued detention violates his Fourth and Fifth Amendment rights, as well as the Immigration and Nationality Act ("INA").  (Doc. # 1).  Respondents filed their Responses (Docs. # 5 and 6) and Petitioner filed his Reply (Doc. # 7).

## III.    ANALYSIS

Petitioner concedes that as an arriving alien, he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).  (Doc. # 7 at 2).  Thus, unlike many recent habeas corpus petitions this Court has reviewed, Petitioner is not arguing that he is being

improperly detained under 8 U.S.C. § 1225.  Rather, Petitioner states that the issue before this Court is "whether the detention here was lawful *ab initio* and whether the Fourth and Fifth Amendment Procedural Due Process rights of the Petitioner were violated by the Respondents."  (*Id*.).

## A.  Fourth Amendment

Petitioner alleges that his detention violates the right against unlawful search and seizure guaranteed by the Fourth Amendment.  (Doc. # 1 ¶ 36).  Petitioner alleges that he "was not the subject of any warrant, but was nonetheless detained without reasonable suspicion of criminality or probable cause."  (*Id*. ¶ 28).  Respondent states that "Section 1225(b)(2)(A) [] does not require a warrant."  (Doc. # 6 at 4) (citing *Buriev v. Warden*, No. 25-cv-60459, 2025 WL 2763202, at *3 (S.D. Fla. Sept. 26, 2025)).  Moreover, Respondent argues that "[t]here is no doubt that 'the mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding.'"  (*Id*.) (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1051 (1984)).

In the immigration context "an unlawful arrest does not automatically result in suppression of evidence."  *Gabriel v. Hermosillo*, No. 2:25-cv-02594-DGE-GJL, 2026 WL 194233, at *5 (W.D. Wash. Jan. 26, 2026); *see also Lopez-Mendoza*, 468 U.S. at 1051 ("We hold that evidence derived from [an unlawful arrest] need not be suppressed in an [immigration] civil deportation proceeding.").  The Sixth Circuit acknowledged that *Lopez-Mendoza* established that a defendant, including his identity or body, is properly before a court "regardless of whether this information was obtained in violation of his Fourth Amendment rights."  *United States v. Navarro-Diaz*, 420 F.3d 581, 588 (6th Cir. 2005).  Thus, "the 'body' or 'identity' of a defendant or respondent in a criminal or civil proceeding

3

is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Lopez-Mendoza*, 468 U.S. at 1039. Accordingly, the Court need not address the substantive issue of whether Petitioner's Fourth Amendment rights were violated because even if they were, he is not entitled to habeas relief on that basis.

### B. Fifth Amendment

Petitioner next contends that his detention violates his Fifth Amendment Due Process rights. (Doc. # 1 ¶ 35). Specifically, Petitioner states that he has been detained for over six (6) months without a bond hearing "on the basis that the Court lacked jurisdiction." (Doc. # 7 at 4). Petitioner is not challenging the constitutional adequacy of removal proceedings. "Indeed, his petition has nothing at all to do with gaining admission to the United States or with the adequacy of the 'rights regarding admission that Congress has provided by statute.'" *Alvarez-Rico v. Noem, et al.*, No. 4:26-cv-00729, 2026 WL 522322, at * 4 (S.D. Tex. Feb. 25, 2026). Because Petitioner does not dispute that he is being properly held under § 1225, "the question before the Court is whether Respondent['s] interpretation and application of § 1225(b)(2) has deprived [Petitioner] of his due process rights under the Fifth Amendment." *Azalyar v. Raycraft*, No. 1:25-cv-916, 2026 WL 30741, at *3 (S.D. Ohio Jan. 2, 2026); *see also Alvarez-Rico*, 2026 WL 522322, at * 4 ("Petitioner invokes the due process clause solely to challenge the constitutionality of his continued detention without any determination that he presents a risk of flight or danger to the community."). For reasons set forth below, the Court concludes that "'[n]on-punitive detention in the immigration context violates the Due Process Clause,' [] absent 'adequate procedural protections' or a 'special justification' outweighing a petitioner's

4

liberty interest." *Azalyar*, 2026 WL 30741, at *3 (quoting *Padilla v. United States Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2003) and *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)); *see also Alvarez-Rico*, 2026 WL 522322, at * 3 ("Assuming that § 1225(b)(2) properly applies to Petitioner, the provision is unconstitutional as applied to Petitioner."); *Perea-Berrio v. Tate*, No. 4:26-cv-01568, 2026 WL 709481, at * 3 (S.D. Tex. Mar. 13, 2026) ("The Court remains persuaded that the government may not, consistent with due process, arbitrarily revoke a noncitizen's release from custody without an individualized determination that the reasons why the noncitizen was initially released are no longer applicable, regardless of what procedure is provided for by the statute."); *Bonilla Chicas v. Warden*, No. 5:26-cv-131 2026 WL 539476, at * 6 (S.D. Tex. Feb. 20, 2026) ("[T]his Court may consider [the petitioner's] as-applied due process challenge even if he is properly subject to mandatory detention under  8 U.S.C. § 1225").

The Fifth Amendment states, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status.  *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))).  To determine whether a detainee's due process rights have been violated, courts within the Sixth Circuit apply a three-part balancing test:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

### 1. Private interest

As to the first factor, Petitioner has a cognizable private interest in avoiding detention without an opportunity for a bond hearing. *See Hamdi*, 542 U.S. at 531 (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]"). Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."). Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings. *See Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). Further, the Supreme Court has previously required individualized hearings for deprivations of interests less fundamental than Petitioner's interest in freedom from detention. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits).

Respondents are firm in their position that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2), yet they "fail to contend with the liberty interests created" when the United States paroled Petitioner in 2018. *Azalyar*, 2026 WL 30741, at *4; *see also Alvarez-Rico*, 2026 WL 522322, at *5 ("It is well-established that once the government opts to provide a liberty or property interest, it cannot arbitrarily revoke this benefit without due process of law."). Petitioner has spent nearly eight years at liberty in

the United States, and therefore "possesses a *significant* private interest in his freedom from detention." *Azalyar*, 2026 WL 30741, at *4 (emphasis in original); *see also Singh v. Andrews*, No. 1:25-cv-801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (holding that the petitioner had a substantial private interest in remaining free from detention because he had been "out of custody for nearly a year-and-a-half, and during that time, ha[d] lawfully worked full-time, and regularly volunteer[ed] at his temple."); *Bonilla Chicas*, 2026 WL 539475, at * 10 ("Petitioner's private interest in his release from detention cannot be overstated. . . . Petitioner has a strong private interest in his release from detention because he has lived in the United States for many years with his family, owns a business, and has never been convicted of a criminal offense."). This Court agrees with numerous other district courts "in finding that individuals paroled from civil immigration custody have a protectable liberty interest in remaining so." *Azalyar*, 2026 WL 30741, at *4.

### 2. Erroneous deprivation

The second *Mathews* factor requires the Court to consider "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Hernandez-Fernandez v. Lyons*, No. 5:25-cv-773, 2025 WL 2976923, at *9 (W.D. Tex. Oct. 21, 2025) (quoting *Martinez v. Sec. of Noem*, No. 5:25-cv-01007-JKP, 2025 WL 2598379, at *3 (W.D. Tex. Sept. 8, 2025)). Respondent argues that because "there is no indication that [Petitioner] is not being properly detained as an applicant for admission, the risk that he is inappropriately being deprived of his freedom during this limited period of time is not significant." (Doc. # 5 at 7).

The Court, along with the Petitioner himself, agrees that he is being properly detained under § 1225(b)(2).  Regardless, his detention "must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community."  *Azalyar*, 2026 WL 30741, at *5 (quoting *Valencia Zapata v. Kaiser*, No. 25-cv-07492, 2025 WL 2578207, at *9-10 (N.D. Cal. Sept. 5, 2025)).  The United States previously determined that Petitioner did not pose a threat, paroling him into the United States under 8 U.S.C. § 1182(d)(5)(A), which allows for DHS to parole a noncitizen into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit . . . ."  (*See* Doc. # 6-1 at 3).  Because Respondent has "'communicated no basis under those statutory purposes' for re-detaining him now, there is a high risk that [Petitioner] has been and will continue to be erroneously deprived of his liberty."  *Azalyar*, 2026 WL 30741 at *5 (quoting *Zapata*, 2025 WL 2578207, at *10).

Although Petitioner previously requested a custody redetermination, the IJ denied the redetermination on jurisdictional grounds.  (Doc. # 7 at 6).  Thus, Petitioner was not afforded a constitutionally adequate custody redetermination hearing at that time.  Therefore, to counter the current risk of erroneous deprivation, a *constitutionally proper* custody redetermination hearing is appropriate.  *See Azalyar*, 2026 WL 30741 at *5 ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying Azalyar's continued detention[.]"); *Hernandez-Fernandez*, 2025 WL 2976923, at *9 ("[T]he risk of erroneous deprivation is high if Hernandez is not afforded a detention hearing"); *Alvarez-Rico*, 2026 WL 522322, at * 6 ("Absent some sort of pre-detention hearing to determine whether his circumstances have changed such that he now presents a danger or a flight risk when the government previously determined

8

that he presented neither, the risk of erroneous deprivation of [the petitioner's] liberty interest is obvious."); *Edahi v. Lewis*, No. 4:25-cv-126-RGJ, 2025 WL 3466682, at *14 (W.D. Ky. Nov. 27, 2025) (holding that detention "without any individualized assessment, establishes a 'high risk of erroneous deprivation' of a protected liberty interest." (quoting *Munoz Materano v. Arteta*, No. 25 Civ. 6137, 2025 WL 2630826, at *15 (S.D.N. Y. Sept. 12, 2025))).

### 3. Government interest

Finally, the Court must weigh the government's interest.  Respondent contends that the United States' interest is significantly higher than Petitioner's own interest in not being detained.  (Doc. # 6 at 11).  The Court disagrees.  Of course, the Court recognizes that the government "has legitimate interests in ensuring that noncitizens appear for removal hearings and do not pose a danger to the community."  *Azalyar*, 2026 WL 30741, at *5 (citing *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017)).  However, a proper custody redetermination will allow the government to plead its case.  Once a constitutionally adequate custody redetermination hearing takes place, the government is free to argue its position on why Petitioner should not be granted bond—such an opportunity ensures that there is no risk of impeding on the government's interest. Accordingly, "the government's interest in protecting the public of avoiding additional administrative burdens do not outweigh the countervailing liberty interest at stake," *Padilla*, 704 F. Supp. 3d. at 1174, "especially when an established mechanism exists to vindicate due process."  *Azalyar*, 2026 WL 30741, at *5; *see also Bonilla Chicas*, 2026 WL 539475, at * 11 ("Although Petitioner's detention is governed by 8 U.S.C. § 1225 . . . the idea of individualized custody determinations are not new. . . . The procedures already

9

available to make individualized determinations of the need for detention demonstrate that such a requirement prior to detention is not overly burdensome in Petitioner's case.").

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's continued detention without a custody redetermination hearing is unlawful and a violation of his Fifth Amendment rights. Accordingly, **IT IS ORDERED** as follows:

(1)    Petitioner's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)    Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide him with a **constitutionally adequate bond hearing before an IJ within seven (7) days of the date of this order**; and

(3)    Respondents shall file a Status Report with this Court **on or before April 16, 2026**, to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 2nd day of April, 2026.



Signed By:

David L. Bunning    DB

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-17 - Order granting writ.docx

10